IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Stacy Abron, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 C 50238 |
| | ) | |
| vs. | ) | |
| | ) | |
| Vi-Jon, LLC, | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated below, defendant's motion to dismiss [20] is granted. This case is dismissed with prejudice.

## STATEMENT-OPINION

Plaintiff, Stacy Abron, individually and on behalf of all others similarly situated, brings this action against defendant, Vi-Jon, LLC. Plaintiff is a citizen of Illinois. Defendant is a limited liability company whose sole member is Vi-Jon Holdings, Inc., a Delaware corporation with its principal place of business in Missouri. The aggregate amount in controversy is alleged to exceed $5 million. Jurisdiction is properly alleged under 28 U.S.C. § 1332(d)(2).

Defendant manufactures, labels, markets, and sells 3% hydrogen peroxide solution under the Swan brand ("Product"). Dkt # 10, p. 1, ¶ 1. The Product's label contains the phrases "First Aid Antiseptic/Oral Debriding Agent" and "For Treatment of Minor Cuts & Abrasions". *Id.*, p. 2., ¶ 8. The complaint alleges the dictionary definition of "treat" is "attempting to heal, improve or cure a condition," *id.*, p. 3., ¶ 9, and that "[w]hile hydrogen peroxide may reduce the number of bacteria present at a wound, no credible evidence supports a connection between the number of bacteria and reduction in healing time of a clean wound." *Id.*, ¶ 10. Plaintiff alleges that "[w]hile the back panel Drug Facts contains the authorized statement that the Product can be 'Use[d] [as] first aid to help prevent the risk of infection in minor cuts, scrapes and burns,' this function is distinct from 'treat[ing]' infection in minor cuts, scrapes, and burns, which hydrogen peroxide is not authorized to claim." *Id.*, ¶ 11. Plaintiff alleges that "the Mayo Clinic and numerous medical studies advise that [hydrogen peroxide] does not help treat minor cuts and abrasions," *id.*, pp. 3 -4, ¶ 12, "because many minor skin injuries, such as cuts and scrapes are self-healing." *Id.*, p. 4, ¶ 13. She alleges the "representation 'For treatment of minor cuts & abrasions,' tells the consumer hydrogen peroxide will assist in the healing process and shorten healing time, when this statement is false, misleading and not authorized by any applicable body," *id.*, ¶ 18, and that "[r]easonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative

1

to itself and other comparable products." *Id.*, ¶ 20. Thus, plaintiff contends the appearance of "For Treatment of Minor Cuts & Abrasions" on the Product's label is misleading.

Plaintiff's claim is that defendant's misrepresentations injured her by inducing her to buy defendant's hydrogen peroxide, which she would not have purchased or would have paid less for, had she known about the misrepresentations. Plaintiff has identified the following legal theories to support this claim for relief: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.; (2) violation of other states' consumer fraud acts[1], (3) breach of an express warranty, breach of an implied warranty of merchantability/fitness for a particular purpose and breach of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment. Defendant moves to dismiss [20] for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, this requirement is met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009). While the court takes all factual allegations of the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (quotation marks and citation omitted).

Preemption

Defendant argues plaintiff's claim, brought under Illinois state-law theories, is preempted by federal law. The Food Drug and Cosmetic Act ("FDCA") provides in, relevant part, that "no State or political subdivision of a State may establish or continue in effect any requirement . . . (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter." 21 U.S.C. § 379r(a)(2). "States can impose requirements that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements. Thus, to avoid preemption, a state law claim related to misleading labeling must allege a violation of the FDCA." *Harris v. Topco Associates, LLC*, 538 F.Supp.3d 826, 831 (N.D. Ill. 2021). Defendant argues plaintiff's challenge under state law to the use of "For Treatment of Minor Cuts & Abrasions" on the Product's label is an improper attempt to impose via state law a requirement "that is different from or in addition to, or that is otherwise not identical to," those imposed by the FDCA.

Under the authority of the FDCA, the Food and Drug Administration ("FDA") regulates over-the-counter ("OTC") drugs via a "monograph" system established by the FDA's "Over-the-Counter Drug Review" process. *Natural Resource Defense Council, Inc. v. United States Food*

---

[1] The complaint also invokes the consumer fraud laws of states other than Illinois as supporting the claims of members of the putative class comprised of purchasers of defendant's hydrogen peroxide in Alabama, South Carolina, Wyoming, Delaware, Alaska, West Virginia, Arkansas, and Oklahoma.

*and Drug Administration*, 710 F.3d 71, 75 (2nd Cir. 2013). "Under this system, FDA issues a detailed regulation—a 'monograph' for each therapeutic class of OTC drug products. Like a recipe, each monograph sets out the FDA-approved active ingredients for a given class of OTC drugs and provides the conditions under which each active ingredient is GRAS/E[2]." *Id.* "Through the OTC Drug Review, FDA determines the GRAS/E status of each OTC drug product and issues monographs for each category." *Id.* As relevant here, there were several OTC Tentative Final Monographs pending on the March 27, 2020 effective date of the Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). The CARES Act contained a provision deeming certain of those Tentative Final Monographs to be final administrative orders. 21 U.S.C. § 355h(b)(8)(A). Since the CARES Act effective date, the FDA, over time, has posted OTC monographs that had become final administrative orders on the CARES Act effective date.

On May 2, 2023, the FDA posted[3] the Final Administrative Order dealing with hydrogen peroxide as Over-the-Counter Monograph M003: First Aid Antiseptic Drug Products for Over-the-Counter Human Use. ("OTC Monograph M003")[4]. https://dps.fda.gov/omuf/monographsearch/monograph_m003 OTC Monograph M003 provides: "The representation of a drug, in its labeling, as an antiseptic shall be considered to be a representation that it is a germicide." *Id.,* § M003.3(a). "First aid antiseptic" is defined as "[a]n antiseptic-containing drug product applied topically to the skin to help prevent infection in minor cuts, scrapes, and burns." *Id.,* § M003.3(b). Section M003.50(a) provides that the labeling of the product must contain the established name of the of the drug (i.e., hydrogen peroxide) and identify the product as a "first aid antiseptic." The Product meets this labeling requirement. The Product's label also includes one of the versions of the statement required by Section M003.50(b): "first aid to help prevent the risk of infection in minor cuts, scrapes, and burns" under the heading of "Uses." Thus, the specified labelling requirements imposed by OTC Monograph M003 are met.

Nonetheless, plaintiff argues that her challenge to the label's inclusion of the additional statement "For Treatment of Minor Cuts & Abrasions" is not an attempt to impose a different, additional, or not identical requirement on the Product's labelling. Plaintiff first argues that she is not attempting to impose different or additional requirements by means of state law "because the representations about the Product's efficacy were made to her, not to the FDA. Dkt # 25, p. 12. However, plaintiff is complaining about the label. The FDA regulates the content of the label to control information that the label conveys to consumers like plaintiff. Representations made on product labels to consumers like plaintiff are precisely what the FDA is regulating in OTC Monograph M003. Plaintiff's argument is baseless.

Plaintiff next argues, essentially, that hydrogen peroxide is not effective. She does so by pointing to text in a Proposed Rulemaking for Establishment of a Monograph for OTC Topical Antibiotic Products, 42 FR 17642, 17648 (April 1, 1977) ("1977 Proposed Rulemaking") and cites to a general discussion in an Advance Notice of Proposed Rulemaking for Oral Health Care

---

[2] "GRAS/E" stands for "generally recognized as safe and effective."

[3] See, Notice of Final Administrative Orders for Over-the-Counter Monographs; Availability, 86 FR 52474-01 (September 21, 2021).

[4] The source for OTC Monograph M003 was "Topical Antimicrobial Drug Products for Over-the-Counter Human Use: Tentative Final Monograph for First Aid Antiseptic Drug Products, published July 22, 1991 ("1991 Tentative Final Monograph") published at 56 FR 33644.

Drug Products for Over-the-Counter Human Use; Establishment of a Monograph. 47 FR 22760, 22831 (May 25, 1982) ("1982 Advance Notice") concerning the effectiveness of antimicrobial agents. However, the cited material is inapposite.

The FDA regulates hydrogen peroxide as a topical *antiseptic* under OTC Monograph M003. Under OTC Monograph M003, hydrogen peroxide is generally recognized as safe and effective as a topical antiseptic. Neither of the documents cited by plaintiff are listed as sources for OTC Monograph M003. Neither is a final administrative order. The 1977 Proposed Rulemaking deals with *antibiotics* not *antiseptics*. Hydrogen peroxide was not reviewed in the 1977 Proposed Rulemaking and is not regulated under the final administrative order, Over-the-Counter Monograph M004: First Aid Antibiotic Drug Products for Over-the-Counter Human Use (posted May 2, 2023) ("OTC Monograph M004"), https://dps.fda.gov/omuf/monographsearch/monograph_m004 which regulates topical antibiotics. Hydrogen peroxide is a topical *antiseptic* not a topical *antibiotic* in the regulatory scheme.

As to its use as an oral health care drug product, hydrogen peroxide is regulated as an oral *debriding* agent under the FDA's Final Administrative Order Over-the-Counter (OTC) Monograph M022: Oral Health Care Drug Products for Over-the-Counter Human Use (Posted October 14, 2022) ("OTC Monograph M022"). https://dps.fda.gov/omuf/monographsearch/monograph_m022 Hydrogen peroxide is not an *oral antiseptic* under OTC Monograph M022. OTC Monograph M022, the final administrative order regulating *oral* OTC health care drug products, has no bearing on hydrogen peroxide's use as a *topical antiseptic* nor does anything in the 1982 Advance Notice. Plaintiff's argument that hydrogen peroxide is ineffective contradicts OTC Monograph M003 and, therefore, is unavailing.

Plaintiff contends that because the phrase "for treatment of minor cuts and abrasions" has not been expressly approved by the FDA for use on a label, plaintiff is not attempting to impose a requirement that is different from or in addition to, or that is otherwise not identical with, the FDA requirement. Defendant argues that the 1991 Tentative Final Monograph shows the FDA was presented with and did not object to labeling submitted by a manufacturer containing the phrase "for treatment of minor cuts and abrasions" the precise phrase on the Product's label plaintiff claims is misleading. The relevant portion of the 1991 Tentative Final Monograph is as follows:

### H. Comments on Hydrogen Peroxide

36. Two comments requested that hydrogen peroxide solution (3 percent) be included in the monograph as a Category I skin antiseptic. One comment pointed out that no mention of the ingredient is made in the proposed or tentative final monograph even though hydrogen peroxide has been recognized by the U.S.P. for many decades as a topical anti-infective for application to skin and mucous membranes. The comment submitted two references to show that hydrogen peroxide is a desirable skin antiseptic that can be used safely and effectively by the layman (Refs. 1 and 2).

Hydrogen peroxide solution (3 percent) for use as a skin antiseptic was not classified in the previous tentative final monograph because it was deferred to the Miscellaneous External Panel. (See comment 85, 43 FR 1210 at 1223.) A manufacturer had made a

submission (Ref. 3) on hydrogen peroxide (U.S.P., 3 percent) as a first aid antiseptic drug product to the Miscellaneous External Panel but that Panel disbanded before it reviewed hydrogen peroxide. The agency subsequently concluded that it would be appropriate to categorize hydrogen peroxide as a first aid antiseptic in this antimicrobial rulemaking. Accordingly, the agency requested and received permission from the manufacturer to place the manufacturer's submission (Ref. 3) on public display in the Dockets Management Branch under the antimicrobial docket number (Ref. 4).

The submission forwarded by the manufacturer (Ref. 3) included labeling for a currently marketed product containing hydrogen peroxide solution U.S.P. 3 percent, which states: "First aid antiseptic" "For treatment of minor cuts and abrasions." The submission also included safety and effectiveness data from published articles and unpublished studies. These data indicate that hydrogen peroxide inhibits S. aureus, Salmonella typhosa, Escherichia coli (E. coli), Proteus vulgaris, Klebsiella pneumoniae, Streptococcus hemolyticus, and P. aeruqinosa. The manufacturer also provided in vitro data to show that 3 percent hydrogen peroxide reduced the number of S. aureus ATCC 6538P by 3 logs (3 log10) within 5 minutes and completely inhibited all bacteria within 10 minutes.

In a separate OTC drug rulemaking, for OTC oral mucosal injury drug products, the agency found hydrogen peroxide (3 percent in aqueous solution) safe for short-term use up to 7 days. (See the Federal Register of July 26, 1983, 48 FR 33984 at 33993.)".)

Hydrogen peroxide achieves its intended benefit in vivo by means of both a mechanical action and a measurable antibacterial action. Because hydrogen peroxide has been demonstrated to be both safe and effective for use in minor wounds, the agency is proposing to classify hydrogen peroxide (3 percent in aqueous solution) as Category I for use as a first aid antiseptic drug product.

56 FR 33644 at 33659

Given the submission's label description :"First aid antiseptic" "For treatment of minor cuts and abrasions" and the supporting effectiveness data, and the FDA's statement that hydrogen peroxide was "both safe and effective for use in minor wounds" and should be classified as "Category I for use as a first aid antiseptic drug product," it is evident the FDA viewed "for treatment of minor cuts and abrasions" as an appropriate description of a drug that is "safe and effective for use in minor wounds." Plaintiff's argument that defendant's label does not comply with the FDA regulation fails. Plaintiff's suit invoking state law is an attempt to impose a requirement that is "different from or in addition to, or that is otherwise not identical with a requirement" under the FDCA, and, therefore, is preempted under 21 U.S.C. § 379r(a)(2).

Even if plaintiff's claim under state law was not preempted under 21 U.S.C. § 379r(a)(2), plaintiff's complaint would still fail to state a claim upon which relief can be granted.

ICFA

"ICFA is a regulatory and remedial statute intended to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices." *DeMaso v. Walmart, Inc.*, 21-cv-06334, 2023 WL 1800208, * 3 (N.D. Ill. Feb. 7, 2023) (quotation marks and citation omitted). The elements of a claim under ICFA are: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the

occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801, 856 (Ill. 2005). "To adequately state a claim for a violation of ICFA, the challenged representation must be deceptive." *Fuchs v. Menard*, No. 17-cv-01752, 2017 WL 4339821 * 3 (N.D. Ill. 2017). "[A] court may dismiss an ICFA claim at the pleading stage if the statement is not misleading as a matter of law. A statement is deceptive if it creates a likelihood of deception or has the capacity to deceive, in that it may mislead a 'reasonable consumer,' as understood in light of all the information available to plaintiffs." *Id.* "[T]he reasonable consumer standard asks whether there is a "probability that a significant portion of the *general consuming* public * * * acting reasonably in the circumstances, could be misled." *Lederman v. Hershey Co.*, 21-cv-4528, 2022 WL 3573034 at * 4 (N.D. Ill. Aug. 19, 2022) (quotation marks and citations omitted) (emphasis and alteration in original).

Plaintiff has not alleged facts which suggest plaintiff has a right to relief above the speculative level. *Iqbal*, 556 U.S. 679. Plaintiff is required to show that there is a probability that a significant portion of the general consuming public, acting reasonably in the circumstances could be misled. She has failed to do so. She has not alleged any facts suggesting that the general consuming public thinks that "for treatment of minor cuts & abrasions" means anything different from the language the FDA requires to be on the label; "first aid to help prevent the risk of infection in minor cuts, scrapes, and burns." She has simply made the conclusory statement that "'For treatment of minor cuts & abrasions,' tells the consumer hydrogen peroxide will assist in the healing process and shorten healing time." Plaintiff alleges what she thinks "for treatment of minor cuts & abrasions" means but she alleges no facts to show what a significant portion of the general consuming public believes the statement means. Plaintiff has not shown she is entitled to relief. *Iqbal,* 556 U.S. at 679. Her conclusory allegations fail to state a claim under ICFA. *Lederman*, 2022 WL 3573034 at * 4.

<u>Breach of Express, Implied Warranties and MMWA</u>

"To proceed on an Illinois claim for breach of express warranty, Plaintiff must sufficiently plead that defendant (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis of the bargain; and (4) guaranteed that the goods would conform to the promise. In a claim for breach of an implied warranty, plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. To be merchantable the goods must be, among other things, fit for the ordinary purpose for which the goods are used." *Reinitz v. Kellogg Sales Company*, No. 21-cv-1239, 2022 WL 1813891, * 5 (C.D. Ill. June 2, 2022) (quotation marks and citations omitted). Dismissal of an ICFA claim that product packaging was misleading is fatal to claims for breach of express and implied warranties. *Id.*; *Chiapetta v. Kellogg Sales Company*, No. 21-CV-3545, 2022 WL 602505, * 6 (N.D. Ill. Mar. 1, 2022); *Spector v. Mondelez International, Inc.*, 178 F.Supp.3d 657, 674 (N.D. Ill. 2016).

"In claims brought under the MMWA, state law governs the creation of implied warranties." *Reinitz*, 2022 WL 1813891 at * 5. Since the court has dismissed plaintiff's claim under both express and implied warranty theories under Illinois law, her claim under the MMWA must be dismissed as well. *Id.* ("As Plaintiff does not have viable state-law warranty claims, she cannot proceed under Magnuson-Moss."); *Chiapetta*, 2022 WL 602505 at * 7

6

(dismissing MMWA claim because express and implied warranty claims had been dismissed); *Floyd v. Pepperidge Farm, Inc.* 581 F. Supp.3d 1101, 1111 (S.D. Ill. 2022) (dismissing MMWA claim because express and implied warranty claims had been dismissed).

<u>Negligent Misrepresentation, Fraud and Unjust Enrichment</u>

Under Illinois law, fraud and negligent misrepresentation claims require a false statement of material fact. *Floyd*, 581 F. Supp.3d at 1112. Since the court has found defendant made no false statement, her negligent misrepresentation and fraud claims fail. Plaintiff's claim of unjust enrichment is tied to her fraud claim. Because plaintiff has failed to state a claim under a fraud theory, her claim under an unjust enrichment theory fails as well. *Reinitz*, 2022 WL 1813891 at * 6.

<u>Multi-State Class</u>

Plaintiff alleges the "Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to [ICFA] and prohibit the use of unfair or deceptive practices in the conduct of trade or commerce." Assuming this to be true, the complaint fails to state a claim under any of these statutes for the same reasons it failed to do so under ICFA—lack of deception. *See Jacobs v. Whole Foods Market Group, Inc.*, No. 22 C 2, 2022 WL 33692773, * 2 (N.D. Ill. Aug. 16, 2022)

Normally, when a complaint is dismissed, the plaintiff should be given an opportunity to file an amended complaint unless amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 520 (7th Cir. 2015). Here, amendment would be futile because no amended complaint can change the fact plaintiff's claim is preempted under 21 U.S.C. § 379r(a)(2) and that defendant's label is not misleading.

For the foregoing reasons, defendant's motion to dismiss [20] is granted. This case is dismissed with prejudice.

Date: 6/20/2023                                   ENTER:

_Philip G. Reinhard_
_____
United States District Court Judge

Electronic Notices.